I must respectfully dissent. I concur with Justice Houston on all points in his dissent. I address only the issue of Attorney Dean's communication with Ms. Dorothy Taylor.
Alabama Rule of Professional Conduct 4.2 states:
 "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."
The comment to the rule states:
 "In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization."
(Emphasis added.)
The record is unclear as to whether Attorney Richard C. Dean, Jr., knew, when he telephoned Ms. Taylor, who would be one of those persons mentioned in the comment to the rule, whether she was represented by counsel. Dean contends that he spoke with Taylor before he filed the lawsuit, but Taylor was unsure when she spoke with Dean. The record does not affirmatively state that Ms. Taylor was represented by counsel when Dean contacted her. Also, the record does not indicate whether Homemakers of Montgomery, Inc., had attorneys on its staff or on retainer. However, a reasonably prudent attorney should know that corporations routinely have in-house counsel or have retained counsel.
The following things are clear. First, Attorney Dean was procured by Ms. Gaylard for the purpose of filing a lawsuit against Homemakers based on the alleged acts or omissions of Taylor. Second, Dean contacted Taylor by telephone, knowing that her acts or omissions could be imputed to Homemakers, and knowing that her statements could constitute admissions on the part of Homemakers. Third, Dean recorded the telephone conversation without Taylor's consent. Fourth, at the outset of the telephone conversation, Taylor told Dean repeatedly and in plain language that she did not want to speak with him because she believed that her employer would not want her to do so. Fifth, Dean repeatedly violated Taylor's requests to be excused from speaking with him, and he continued to pressure her until she spoke with him. Based upon the facts of this case, it is not clear whether Attorney Dean violated the letter of Rule 4.2. However, it is clear that Dean violated the spirit of Rule 4.2.
Alabama passed the nation's first code of lawyer ethics in 1887, and it has a rich heritage as the leader in legal ethics. Rule 4.2 of our present Rules of Professional Conduct has been passed down from our first Code of Ethics. See 118 Ala. XXIII-XXXIV. This first Code of Ethics was written by Col. Thomas Goode Jones, who was later Governor of Alabama.[3] Benjamin P. Crum, The Alabama Code of Legal Ethics, 2 Ala. Lawyer 245-58 (1941). However, Governor Jones was not the original author of the concepts embodied in his code of lawyer ethics.
In 1836, David Hoffman published Hoffman's Course of LegalStudies, which contains perhaps the first outline of a legal code of ethics for American lawyers. George M. Akers, Hoffman'sFifty Resolutions, 14 Ala. Lawyer 171 (1953). These resolutions are reminiscent of a noble breed of lawyers and should stir the conscience of every Alabama lawyer.
In Hoffman's resolutions, he addressed the issue now before this court:
 "WHEN PERMISSIBLE TO CONVERSE WITH OPPONENT'S CLIENT
 "43. I will never enter into any conversation with my opponent's client, relative to *Page 370 
his claim or defense, except with the consent and in the presence of his counsel.
 "DEALINGS WITH PARTY NOT REPRESENTED
 "44. Should the party just mentioned have no counsel, and my client's interest demand that I should still commune with him, it shall be done in writing only, and no verbal response will be received. And if such person be unable to commune in writing, I will either delay the matter until he employs counsel, or take down in writing his reply in the presence of others; so that if occasion should make it essential to avail myself of his answer, it may be done through the testimony of others, and not by mine. Even such cases should be regarded as the result of unavoidable necessity, and are to be resorted to only to guard against great risk, the artifices of fraud, or with the hope of obviating litigation."
As quoted at 14 Ala. Lawyer 186. (Emphasis added.)
The lawyer has an advantage over the layman. The lawyer, being more knowledgeable of the law and perhaps more cunning than the layman, can use knowledge and experience to lay a trap for the other. The purpose of cross-examining a witness is often to lay a trap for the witness. I would hope that with both parties' attorneys present and with the judge overseeing the proceeding, such a trap will lead to the truth. The layman being interviewed by an opponent's attorney or a potential opponent's attorney is not on a level playing field.
The spirit of our present Rule 4.2 is to level the legal playing field. In this case, Attorney Dean, knowing that he planned to sue Homemakers and knowing that Ms. Taylor had no attorney to assist her, manipulated Ms. Taylor. Dean felt free to use whatever artifice and coercion was necessary to interrogate Ms. Taylor because he knew that she had no attorney to object to his repeated and uninvited questions. The record shows that Taylor told Dean repeatedly and in certain terms that she did not want to talk with him, could not talk with him, and would not talk with him. Nevertheless, Attorney Dean persisted and coerced her into saying what he wanted her to say. There is little doubt that if Dean had contacted Taylor in the presence of an attorney for Homemakers or Taylor, or by writing only, as Hoffman suggests, this issue would not be before this Court.
Lawyers who find themselves in Attorney Dean's situation should do three things: (1) identify themselves to the prospective defendant; (2) advise the prospective defendant that they represent the prospective plaintiff; and (3) communicate with the prospective defendant in writing only, with no oral response being received. Attorneys who adhere to this three-pronged approach in communicating with unrepresented prospective defendants will not only bring honor to the legal profession, but will preserve the administration of justice, consistent with the Alabama Rules of Professional Conduct. Lawyers should always strive to maintain the Alabama Bar's high standard of ethics; and now, it is time for the Bar to strive for a higher standard. The trial judge in this case has given us an excellent example to follow.
In assessing Attorney Dean's conduct, this Court must decide whether the trial judge erred in granting Homemakers' motion in limine to prevent the use at trial of the recorded telephone conversation. From a thorough review of the transcript and both parties' briefs, I cannot say that Gaylard has met her burden of proving that the trial court erred in granting Homemakers motion in limine. Johnson v. Langley, 495 So.2d 1061
(Ala. 1986).
Even though Dean may not have violated the letter of Rule 4.2, and therefore may not be subject to discipline, the trial judge in this case recognized the egregiousness of Dean's conduct. In granting the motion in limine, he sought to prevent Dean's client from profiting from such an unfair method of obtaining evidence. In addition, his granting the motion acted as a deterrence to other attorneys contemplating use of the same unfair tactic in future cases. I commend the trial judge for his discernment and the careful balancing he *Page 371 
used in remedying for this manipulation of the justice system and its rules.
Therefore, I must respectfully dissent.
[3] Thomas Goode Jones of Montgomery lived from 1844 to 1914 and served his State as speaker of the house, Governor, member of the Constitutional Convention of 1901, and United States District Judge of the middle and northern districts.